The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

                Plaintiff,

     v.

ROBERT CONRAD OTERO,

                Defendant.

NO.  2:18-cr-00132-RAJ

ORDER ON DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE

## I. BACKGROUND

This matter comes before the Court on Defendant Robert Conrad Otero's motion for compassionate release. Dkt. 797.  Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **DENIES** the motion for the reasons explained herein.

This matter arises out of a joint investigation by the Seattle Police Department, the Drug Enforcement Administration, and the Federal Bureau of Investigation, who were investigating a large drug trafficking organization.  The investigation ultimately led to the use of court-authorized Title III wire intercepts, with interceptions occurring between September 2017 and March 2018.  The wiretaps and other investigative techniques revealed an extensive conspiracy to distribute large amounts of cocaine and heroin, as well as smaller amounts of prescription opiates, methamphetamine, and marijuana.  More

than 100 search warrants were executed at the time of Mr. Otero's arrest on June 6, 2018. During execution of the search warrants, agents seized more than seven kilograms of heroin, multiple kilograms of cocaine, several pounds of methamphetamine, large amounts of U.S. currency, and numerous firearms.  Specifically, when Mr. Otero's residence was searched, agents recovered nearly 10 kilograms of marijuana packaged for shipment, additional unpackaged marijuana, a scale, a loaded handgun, and seven money orders worth approximately $4,500.  PSR ¶ 56; Dkt. 335, ¶ 8(f).

Mr. Otero's role in the conspiracy was as a mid-level re-distributor of at least marijuana.  He was described as a close friend and partner of one of the leaders of the conspiracy.  PSR ¶ 53.  At the time Mr. Otero was first intercepted on the wiretap in this matter, he was on supervised release for two prior federal felony convictions.

On December 20, 2018, Mr. Otero entered a plea of guilty to Conspiracy to Distribute Controlled Substances and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, and concurrently admitted to the related supervised release violations. Dkt. 335.

On March 29, 2019, this Court sentenced Mr. Otero to a 72-month term of imprisonment for the new charge and for the supervised release violations, and imposed five years of supervised release to follow.  Dkt. 447.

Mr. Otero is currently housed at United States Penitentiary Lompoc, with a projected release date of July 17, 2023.

On June 3, 2020, Mr. Otero filed the instant motion for compassionate release, requesting the Court reduce his custodial sentence to either supervised release, to a residential reentry center for up to 180 days, or to home confinement.  Dkt. 797.

Mr. Otero's motion sets forth two principal arguments he contends present extraordinary and compelling reasons for his immediate release: his medical conditions, namely asthma and associated respiratory issues, which place him at higher risk of serious complications from coronavirus 2019 (COVID-19); and his contention that USP Lompoc is unable to adequately manage the pandemic, as evidenced by its high number

1    of positive cases of COVID-19, including some deaths.  Mr. Otero argues his release to

2    the less risky environment of supervised release or home confinement would not only

3    protect him from increased risk of contracting COVID-19 and suffering complications

4    associated with the virus, but also improve staff-to-inmate ratios regarding the spread of

5    the disease.  Mr. Otero contends he would not pose a danger to the community if

6    released.  Dkt. 797.

7           The Government responds that because Mr. Otero has not presented extraordinary

8    and compelling reasons for a reduction in sentence, and because he continues to present a

9    danger to the community, his motion for compassionate release should be denied.

10          The Government argues that Mr. Otero, a 40-year-old man in excellent health, is

11   no more at risk for COVID-19 than anyone else, and that his fear of contracting the virus

12   is speculative and does not constitute grounds for release.  In addition, the Government

13   disputes Mr. Otero's claim that he suffers from asthma and associated respiratory

14   illnesses, and provides evidence that Mr. Otero has repeatedly tested negative for

15   COVID-19.  The Government outlines the steps being taken by the Bureau of Prisons at

16   USP Lompoc to address the spread of the virus.  Finally, the Government sets forth Mr.

17   Otero's lengthy criminal history, including this conviction at issue which was committed

18   while Mr. Otero was on federal supervision, indicating Mr. Otero would be a danger to

19   others and to the community should his sentence be reduced to supervised release.  For

20   these reasons, the Government argues Mr. Otero's motion for compassionate release

21   should be denied.  Dkt. 805.

## II. DISCUSSION

### A.    Legal Standard for Compassionate Release

25          18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if

26   "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is

27   consistent with applicable policy statements issued by the Sentencing Commission."  The

28   Sentencing Commission's policy statement, in turn, says that a court may reduce a term

1  of imprisonment if "the defendant is not a danger to the safety of any other person or to

2  the community" and "extraordinary and compelling reasons warrant such a reduction."

3  United States Sentencing Guidelines ("USSG") § 1B1.13.  The policy statement clarifies

4  that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2)

5  "the defendant is suffering from a serious physical or mental condition . . . that

6  substantially diminishes the ability of the defendant to provide self-care within the

7  environment of a correctional facility and from which he or she is not expected to

8  recover."  USSG § 1B1.13 cmt. n.1.  The policy statement also directs a court to consider

9  the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is

10  appropriate and what form compassionate release should take.  USSC § 1B1.13 cmt. n.4.

11      Mr. Otero's motion seeks a reduction in sentence under 18 U.S.C. §

12  3582(c)(1)(A), as amended by the First Step Act of 2018.  As amended, § 3582(c)(1)(A)

13  permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion

14  with the sentencing court for "compassionate release."  As relevant to Mr. Otero's

15  motion, the statute now provides:

16      (c) Modification of an imposed term of imprisonment. --The court
       may not modify a term of imprisonment once it has been imposed
17      except that--

18      (1) in any case--

19      (A) the court, upon motion of the Director of the Bureau of Prisons, or
20      upon motion of the defendant after the defendant has fully exhausted
       all administrative rights to appeal a failure of the Bureau of Prisons to
21      bring a motion on the defendant's behalf or the lapse of 30 days from
       the receipt of such a request by the warden of the defendant's facility,
22      whichever is earlier, may reduce the term of imprisonment (and may
       impose a term of probation or supervised release with or without
23      conditions that does not exceed the unserved portion of the original
24      term of imprisonment), after considering the factors set forth in
       section 3553(a) to the extent that they are applicable, if it finds that--
25

26      (i) extraordinary and compelling reasons warrant such a reduction;

27      . . .

28

ORDER - 4

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The relevant statute gives this Court authority to reduce a previously imposed sentence if three requirements are satisfied: (1) the inmate has either exhausted administrative review of the Bureau of Prison's failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed if that is earlier; (2) the inmate has presented extraordinary and compelling reasons for the requested reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement.

**B.      Exhaustion of Administrative Remedies**

It is undisputed that Mr. Otero has met the exhaustion requirement.  Mr. Otero indicates he submitted his request for compassionate release to the warden of his institution on April 18, 2020.  Dkt. 798, Ex. E.  Counsel also submitted an equivalent request to the institution on that same date.  Dkt. 798, Ex. D.  Mr. Otero received a denial from the Bureau of Prisons dated May 4, 2020.  Dkt. 798, Ex. F.

The Government agrees this statutory prerequisite has been met, as more than 30 days have passed since Mr. Otero and, independently, his attorney, submitted requests for release.  Dkt. 805.

**C.      Extraordinary and Compelling Circumstances**

The Court must next determine if extraordinary and compelling circumstances warrant a reduction of Mr. Otero's term of imprisonment.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13.

The policy statement referenced in § 3582(c)(1) was promulgated by the Sentencing Commission pursuant to the authority Congress vested in it in 28 U.S.C. § 994.  That statute provides:

The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(f).

Consistent with this statute, the applicable policy statement can be found at Section 1B1.13 of the United States Sentencing Guidelines. That statement provides:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--

(1)(A) Extraordinary and compelling reasons warrant the reduction…

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g); and

(3) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

 (4) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (2019).

In the commentary, the Commission goes on to explain what constitutes "extraordinary and compelling reasons" to support a reduction in sentence. Specifically, Application Note 1 provides that extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt.n.1.

Mr. Otero argues extraordinary and compelling circumstances exist in light of the COVID-19 pandemic itself, the conditions at the institution where he is housed as it

relates to the number of inmates and staff who have contracted the virus, his inability to provide self-care and adequate hygiene for his underlying condition, as well as his escalated risk of developing serious complications if he contracts the virus.  Dkt. 797.

Mr. Otero contends his underlying health condition of asthma renders him particularly vulnerable to serious illness and health complications should he contract COVID-19.  He indicates he has a history of suffering from asthma since childhood.  He reports he has no current access to an inhaler or medication and has concerns about asthma triggers in the environment in which he is currently housed.  Further, he is greatly concerned about severe complications if he contracts COVID-19.  Mr. Otero argues that asthma has been a recognized basis for compassionate release.  Dkt. 797, 798, 800.

Mr. Otero provides evidence in the form of medical records documenting his history of asthma since childhood, indicating it is frequently in remission.  Mr. Otero also points to respiratory issues noted in 2013, a respiratory infection he suffered in 2015, and the fact he was prescribed Loratadine for his asthma from August 27, 2013 to August 1, 2017.  Dkt. 800, Ex. A.  Records from Harborview Medical Center document asthma in his medical history as well.  Dkt. 800, Ex. C.

Mr. Otero acknowledges that the clinical data related to COVID-19 has thus far not shown a greater prevalence of asthmatics in populations infected with the virus, however points to indications by the World Health Organization and the Centers for Disease Control that the highest risk groups for developing severe complications from the virus include people with chronic, underlying medical conditions such as asthma and other lung diseases.

Finally, Mr. Otero notes that the CDC has indicated that hospitalization and death rates for African Americans are "substantially higher" than that for whites, adding yet another elevated risk for him, as an African American man.

The Government responds that Mr. Otero's history of asthma is not an extraordinary and compelling reason for release, arguing it is no longer clear that

asthma is a significant risk factor for contracting COVID-19 in the first place or puts him at risk of more severe illness should he be infected. The Government sets forth that even if asthma is a risk factor, that is true only for people with "moderate to severe asthma," and since Mr. Otero's asthma has been in remission for years, he is not at heightened risk.

The Government cites the information gleaned from Mr. Otero by the United States Probation Officer at the time of preparation of his presentence report in March of 2019. Mr. Otero is currently 40 years old. He worked as a personal trainer and manager at a fitness club while on supervised release and expressed an interest in going back to that type of work when he finishes his sentence. PSR ¶¶ 119-121. The presentence report reflects that for the most part, he has been in good health, other than some lingering back pain from a car accident. He suffered a gunshot wound in 2003. At the time of the presentence report interview, he was not taking any medications. PSR ¶¶ 124-127. Mr. Otero's aunt told the probation officer that Mr. Otero "had asthma as a young child and she believes he still struggles with it from time to time. She said, to her knowledge, he is otherwise in good health." *Id.* During his own interview with the probation officer, Mr. Otero did not confirm this information about his asthma.

The Government states Mr. Otero's medical records are consistent with the information set forth in the presentence report, that the exhibits presented in support of Mr. Otero's motion contain evidence of a history of asthma remote in time, and there is no evidence he presently suffers from it. For example, the medical records reflect that Mr. Otero's asthma is noted in the "Remission" category as of January 8, 2015. Dkt. 800, Ex. A, p. 43. Medical records from May 3, 2019 indicate he did suffer from asthma as a child but indicate "last used medication 18 months ago. No issues since that time." Dkt. 800, Ex. A, p. 2. The Government points to an additional medical record from Mr. Otero's health screening on June 6, 2018, which indicates Mr. Otero had not had to use any asthma medication over the prior 18-month period, constituting evidence that his last use of the medication was in approximately January of 2017. Dkt. 800, Ex. A, p. 26.

The evidence before the Court, as set forth above, is that Mr. Otero has not had an active recurrence of asthma and has not required medication to treat it for over three years.

In the records obtained by the Government after the filing of Mr. Otero's motion, there is evidence Mr. Otero's asthma remains in remission and that he is not currently suffering from any other medical conditions that appear to place him at greater risk for a negative outcome if he were to contract COVID-19. The records also reflect that Mr. Otero has been repeatedly tested for COVID-19 with negative results. Dkt. 807.

Responding to Mr. Otero's contention that USP Lompoc is unable to sufficiently manage the pandemic to keep him safe, the Government sets forth in detail the steps the Bureau of Prisons is taking to combat and control the spread of COVID-19 in its facilities, including at USP Lompoc. The Government argues that Mr. Otero's speculative fear of contracting the virus is insufficient to justify compassionate release, as the Bureau of Prisons has taken and will continue to take the necessary steps to safely house inmates during the pandemic. Dkt. 805.

When an inmate has health conditions that make them significantly more vulnerable to COVID-19, that likewise may constitute an extraordinary and compelling circumstance. *See e.g., United States v. Cosgrove,* Case No. CR15-0230-RSM, -F. Supp. 3rd-, 2020 WL 1875509 (W.D. Wash. April 15, 2020; *United States v. Dorsey,* Case No. CR16-0138-BLW-JCC, 2020WL 2562878 (W.D. Wash. May 19, 2020).

While some courts have held, as argued by the Government, that the Sentencing Commission's policy statement on compassionate release remains controlling in the wake of the First Step Act, this Court agrees with the position taken by numerous courts that the "old policy statement provides helpful guidance, [but]…does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *United States v. Cosgrove, Id.; United States v. Rodriguez*, 2020 WL 1627331, (E.D. Penn. Apr. 1, 2020; *United States v. Almontes,* 2020 WL 1812713 (D. Conn. Apr. 9, 2020); *United States v. Haynes,* No. 93 CR1043

(RJD), 2020 WL 1941478 (E.D. N.Y. Apr. 22, 2020); and *United States v. Maumau,* No. 2:08-cr-00758-TC-11, 2020 WL 806121 (D. Utah, Feb. 18, 2020).

The Government concedes that Mr. Otero is being held at a Bureau of Prisons facility that has experienced an outbreak of COVID-19 that includes positive tests, recoveries from the virus, and deaths.  The Government has also outlined the series of methods that have been engaged to combat the disease.  This Court does not dispute that challenging and deadly conditions may exist at varying prison facilities around the United States, including FCI Elkton and the Lompoc complex.  What is critical for this Court's determination of Mr. Otero's motion is whether his individual circumstances warrant compassionate release.

Considering the foregoing, what remains is Mr. Otero's fear of contracting the disease as opposed to suffering from the same, and the concern about the Bureau of Prisons' ability to provide a safe environment.

In this case, the Court does not find that Mr. Otero has demonstrated sufficient facts or evidence to warrant compassionate release. At best, he poses generalized questions about the uncertainty of next steps for COVID-19 in USP Lompoc and the restrictions on his daily living activities.

General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence as set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13. *United States v. Eberhart,* No. 13-cr-00313, 2020 WL 1450745 (N.D. Cal. Mar. 25, 2020.  Nor do such fears warrant a sentence reduction under the Court's independent assessment of the facts and circumstances presented.

**D.  Safety of Others**

Even if this Court were to grant Mr. Otero's request for compassionate release, his motion would fail as the Court finds he presents a danger to the safety of any other person or to the community.  *See* U.S.S.G. §1B1.13(2).  In making this determination, the

ORDER  - 10

Court looks to the nature and circumstances of the underlying offense, the weight of evidence against him, his history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community.  18 U.S.C. §3142(g).

Mr. Otero's criminal conduct was serious and supported by substantial evidence as contained in the Statement of Facts in the Plea Agreement, which sets forth in detail the acts Mr. Otero agreed he committed.  Dkt. 335.

Mr. Otero asserts he does not pose a danger to the community if released immediately, particularly as he would be under the supervision of Probation.  Although he admits his offense involved a weapon, he argues the fact that he didn't commit an act of violence related to this crime, he has not had disciplinary issues while in prison, and has family and extensive community ties in the district, mitigate against a finding that he remains a danger to others.  Dkt. 797.

Mr. Otero indicates his willingness to participate in a residential reentry program for up to 180 days or be placed on electronic home monitoring, arguing the community will be quite adequately protected by Probation's monitoring of him using one of these proposed methods.  Dkt. 797.

The Government responds by highlighting Mr. Otero's extensive criminal history, with three federal felony convictions, two of which involved drug trafficking and firearm possession.  The Government argues Mr. Otero's claim that, if he were to be released, supervision by Probation would protect the community, is belied by the fact that the crime for which he is currently incarcerated was committed while on supervised release, and that he has therefore shown he cannot be trusted to adhere to the conditions of supervision.  Dkt. 805.

The Court agrees with the Government's analysis and sees no mitigation of this concern from the record or proposal submitted by Mr. Otero.  The danger to the community that would be experienced by his release far outweighs his generalized concerns of contracting the COVID-19 virus.

### E.  Other 18 U.S.C. § 3553(a) Factors

In determining whether to grant Mr. Otero's compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court also considered the relevant factors other than noted above as set forth under 18 U.S.C. § 3553(a).  These factors include the need for the sentence imposed, the kinds of sentences available, promoting respect for the law, providing just punishment for the offense, avoiding unwarranted sentencing disparities, and providing medical care in the most efficient manner.  18 U.S.C. § 3553(a)(2)(B, C, D); 18 U.S.C. § 3582(c)(1)(A).

Mr. Otero argues that the Court should apply the factors set forth in 18 U.S.C. § 3553(a) in deciding whether he should be granted compassionate release and that the goal of any sentencing is a sentence "sufficient, but not greater than necessary" to meet the goals of § 3553(a).  Mr. Otero posits that when this Court decided on the original term of incarceration in this matter, the Court did not have in mind the present conditions of Mr. Otero's confinement, where he faces risk of exposure to a potentially fatal disease. He asserts this risk, coupled with the current conditions of his confinement (lockdown and almost total deprivation of access to family and the outside world), results in far greater punishment than a typical sentence.  Dkt. 797.

Mr. Otero indicates he does have a significant criminal history, but explains he also has significant support and ties within this community, including a stable address with his life partner.  Mr. Otero outlines the efforts he has undertaken while incarcerated to improve and educate himself and indicates he has incurred only one minor disciplinary action in prison.  Dkt. 797.

The Government argues the nature of Mr. Otero's offense and the factors set forth in 18 U.S.C. § 3553(a) do not support his release, and that he has failed to establish he is no longer a danger to others and to the community, that releasing Mr. Otero after he has served only two years of a six-year sentence will no longer reflect the seriousness of the offense or constitute sufficient punishment, and that prematurely releasing Mr. Otero

ORDER  - 12

would give rise to unwarranted sentencing disparities.  The Government argues this is particularly true in this case, as this Court sentenced over 40 co-defendants in this matter and carefully balanced the relative culpability of the co-conspirators, their criminal histories, and gave weight to whether they were armed or not during the offense.  The Court then imposed sentences that it believed were proportionate and appropriate. Dkt. 805.

The existence of COVID-19 is a significant concern to this Court, as well as Mr. Otero's well-being.  The §3553 factor analysis supported the sentence that was previously imposed and nothing in the current record warrants a modification in Mr. Otero's sentence and certainly not a reduction for compassionate release.

**F. Consistency with Policy Statement**

Last, the Court must determine whether Mr. Otero's compassionate release would be consistent with the relevant policy statement. *See* U.S.S.G. § 1B1.13(3).  The policy requires the Court to make certain findings before granting an inmate's request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  This directive has been accomplished with the detail of this Order.

### III.  CONCLUSION

For the foregoing reasons, Defendant Robert Conrad Otero's motion for compassionate release is **DENIED**.

DATED this 30th day of June, 2020.

The Honorable Richard A. Jones
United States District Judge

ORDER  - 13